# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39639**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Richard A. WOLCOTT**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 July 2020

————————————

*Military Judge:* Donald R. Eller, Jr. (arraignment); Matthew D. Talcott.

*Approved sentence:* Bad-conduct discharge, confinement for 90 days, forfeiture of all pay and allowances, reduction to E-1, and a reprimand. Sentence adjudged 9 October 2018 by GCM convened at Scott Air Force Base, Illinois.

*For Appellant:* Major Yolanda D. Miller, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before MINK, LEWIS, and D. JOHNSON, *Appellate Military Judges.*

Judge LEWIS delivered the opinion of the court, in which Senior Judge MINK and Judge D. JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

LEWIS, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and a pretrial agreement (PTA),

of two specifications of sexual abuse of a child and one specification of possession of child pornography, in violation of Articles 120b and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 934.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 90 days, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority approved the adjudged sentence.[2]

Appellant raises two assignments of error: (1) whether the general court-martial order accurately and unambiguously reflects the convening authority's dismissal with prejudice of four specifications and the Additional Charge; and (2) whether Appellant is entitled to sentence relief because the language of his reprimand was either cruel and/or unusual punishment or resulted in an inappropriately severe sentence. We grant relief on the first assignment of error by dismissing with prejudice four specifications and the Additional Charge. Otherwise, we find no prejudicial error and affirm the remaining findings and sentence.

## I. BACKGROUND

### A. Appellant and JP

In 2011, Appellant and JP met online as they both shared a common interest in a joke-sharing website. The two became friends on Facebook with Appellant using an account under the alias, "Ruben Wallace." At trial, Appellant stipulated that (1) when he added JP on Facebook she was 12 years old; (2) over time, Appellant made sexual comments and requests of JP; (3) in one request, Appellant asked JP to send him photographs of her wearing her underwear; and (4) JP actually sent Appellant such photos. The stipulation of fact and its attachments do not make clear whether the above conduct occurred before or after Appellant joined the Air Force in September 2011. Regardless of whether the conduct was pre-service or not, Appellant was not subjected to court-martial charges for this behavior.

Appellant communicated with JP after he enlisted in the Air Force using the "Ruben Wallace" Facebook account. After about a year of messaging JP, Appellant told her that his first name was actually Richard. After Appellant

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] Other PTA provisions which limited the amount of confinement and the type of punitive discharge the convening authority could approve had no effect on the adjudged sentence.

completed basic military training and technical school, he began his first assignment at Ramstein Air Base, Germany.

In mid-October of 2013, while assigned at Ramstein Air Base, Appellant used the "Ruben Wallace" Facebook account to communicate indecent language to JP, who was then 15 years old. Appellant sent JP two Facebook messages detailing a fictional story which the stipulation of fact characterized as a "professor and student in a blackmail/sex slave position [which used] vulgar, sexually explicit language [and] described scenes of spanking, bondage, 'punishment,' and violent sexual treatment." During the providence inquiry, Appellant admitted under oath that the story was lewd, contained indecent language, and described detailed sexual activity. Appellant told the military judge he wanted to gratify both his sexual desires and JP's and that he knew JP was under 16 years of age. He also admitted that "nothing justifies sending a story like that to a person that age."

About a week after sending the first story to JP, Appellant sent her three Facebook messages detailing a second story about "a father having sex with his virgin daughter on her 18th birthday and, using vulgar, sexually explicit language, described scenes of masturbation, spanking, bondage, 'punishment,' and violent sexual treatment." Before sending this second story to JP, Appellant wrote a message to her stating "this is father daughter but just imagine it being me instead." As with the first story, Appellant admitted during the providence inquiry that the second story was lewd, contained indecent language, and described detailed sexual activity.

At trial, JP exercised her right to be reasonably heard as a crime victim by providing both an oral and written unsworn statement. She explained how she met Appellant and the circumstances of their relationship. She described how at age 17 she "got tired of feeling dirty and used and told him that [she] no longer wanted to be in any kind of relationship with him; including friendship. As a result, [she] blocked him on Facebook, changed [her] number, and deleted his phone number." She described how as a 20-year-old woman, she felt "gross and stupid" and that "intimate relationships are a chore for [her] to maintain, as [she is] too afraid to trust anyone."

**B. Appellant and AH**

In May of 2014, Appellant was reassigned to Scott Air Force Base (AFB), Illinois. While assigned at Scott AFB, Appellant began a sexual relationship with a 17-year-old female named AH. On several occasions, Appellant and AH masturbated together over Skype.[3] Once in September 2014 and a second time

---

[3] Skype is a software application that allows two-way voice and video calls between computers and mobile electronic devices.

in October 2014, Appellant recorded the Skype sessions with AH and stored both sessions on his computer's hard drive. At trial, Appellant admitted that (1) he knew AH was a minor at the time he recorded the two Skype sessions; (2), he possessed digital videos of AH engaged in sexually explicit conduct because AH exposed her breast and was masturbating; and (3) his conduct could discredit the armed services and lower their standing in the public esteem.

Appellant and AH continued their relationship for three years and at one point lived together. At Appellant's trial, AH submitted a written unsworn statement. She made clear that she "was not victimized" by Appellant. She recalled their home as "one of love and safety and honesty and simply amazing." She described the "crime" as "simply two lovers who had a distance between them making things work." AH explained that two years before the trial she and Appellant "decided that our lives would be better spent continuing on our own paths." Finally, she stated she knew "with extreme confidence" that Appellant is "one of the sweetest and most kind people in [her] life."

## C. The Investigation

In April 2016, JP notified the North Las Vegas Police Department (NLVPD) about an unrelated criminal accusation involving Facebook where JP was the crime victim. As NLVPD conducted their investigation, JP explained her prior interactions on Facebook with Appellant. A detective with the NLVPD eventually shared this information with agents of the Air Force Office of Special Investigations (AFOSI). The AFOSI then opened an investigation and subsequently subpoenaed and reviewed electronically stored information from Facebook including from the "Ruben Wallace" account.

On 12 April 2017, AFOSI agents apprehended Appellant, and executed a search of his house and vehicle. Several of Appellant's electronic devices were seized. Later, the agents conducted a subject interview of Appellant which was video recorded and attached to the stipulation of fact. In the subject interview, Appellant waived his rights under Article 31, UCMJ, 10 U.S.C. § 831, and described some of his prior interactions with JP. Appellant was also questioned about AH as the AFOSI agents knew that AH used to live with Appellant. During this questioning, Appellant admitted doing "sex Skypes" with AH. Eventually, the videos of AH were discovered on Appellant's hard drive.

## II. DISCUSSION

### A. Dismissal with Prejudice

#### 1. Additional Background

The convening authority referred a total of three charges and seven specifications to trial by general court-martial. Appellant pleaded guilty to two of

the charges and three of the specifications.[4] Appellant pleaded not guilty to the remaining four specifications (Specification 1 of Charge I, Specification 1 of Charge II, and Specifications 1 and 2 of the Additional Charge) and the Additional Charge.

Appellant's PTA required the convening authority to "[w]ithdraw Specification 1, of Charge I, Specification 1 of Charge II, and Charge III and its specifications in their entirety, and upon the court-martial's announcement of the sentence, dismiss those charges and specifications with prejudice." After the military judge announced the findings, the trial counsel expressed an intent "to withdraw and dismiss upon announcement of the sentence." Trial defense counsel stated he had no objection to proceeding in this manner. After announcement of sentence the record contains no discussion regarding withdrawal or dismissal. The court-martial transcript also contains no discussion of why the PTA mentioned a "Charge III" when no such numbered charge appeared on the charge sheet.

On 9 October 2018, the same day the court-martial adjourned, the senior trial counsel lined through four specifications[5] and the Additional Charge. The words "withdrawn & dismissed" were written next to the senior trial counsel's initials and the date. The report of result of trial, also dated 9 October 2018, listed the findings for the Additional Charge and the relevant four specifications as "Dismissed after arraignment IAW PTA." The general court-martial order, dated 4 February 2019, listed the findings for the Additional Charge and the relevant four specifications as "Withdrawn and dismissed after arraignment IAW pretrial agreement."

Appellant argues the convening authority failed to unambiguously withdraw and dismiss with prejudice as required by the PTA. Appellant requests we direct the Government to provide a corrected court-martial order that states the affected specifications and additional charge are withdrawn and dismissed

---

[4] Appellant pleaded guilty to Specifications 2 and 3 of Charge I, violations of Article 120b, UCMJ, for sending the two indecent sex stories to JP. Appellant pleaded guilty to Specification 2 of Charge II, a violation of Article 134, UCMJ, for possessing the "sex Skypes" of AH.

[5] The four specifications lined through are: (1) Charge I, Specification 1, an alleged violation of Article 120b, UCMJ, for sexual assault of a child; (2) Charge II, Specification 1, an alleged violation of Article 134, UCMJ, for wrongful production of child pornography; (3) Additional Charge, Specification 1, an alleged violation of Article 134, UCMJ, for knowingly receiving via interstate commerce an obscene visual depiction of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 1466A(a)(1); and (4) Additional Charge, Specification 2, an alleged violation of Article 134, UCMJ, for knowingly possessing via interstate commerce an obscene visual depiction of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 1466A(b)(1).

with prejudice. The Government agrees corrective action is required as there is no documentation that the dismissal was done with prejudice. The Government urges us to dismiss the additional charge and the four affected specifications with prejudice to ensure compliance with the PTA. Appellant submitted a reply brief, but did not take a position on the Government's proposed remedy. We agree the Government's proposed remedy is the correct one.

**2. Law**

"When an appellant contends that the government has not complied with a term of the [PTA], the issue of noncompliance is a mixed question of fact and law." *United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009) (citing *United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006)). Appellant has the burden to establish both materiality and non-compliance. *Lundy*, 63 M.J. at 302. "In the event of noncompliance with a material term, we consider whether the error is susceptible to remedy in the form of specific performance or in the form of alternative relief agreeable to the appellant." *Smead*, 68 M.J. at 59 (citation omitted).

**3. Analysis**

The plain language of the PTA only required the convening authority to withdraw and dismiss, with prejudice, Specification 1 of Charge I and Specification 1 of Charge II. We find the references to the PTA in the report of result of trial or court-martial order insufficient to show the convening authority actually dismissed these two specifications with prejudice.

For the Additional Charge and its two specifications, the parties agree that the PTA contains an error when it incorrectly identifies the "Additional Charge" as "Charge III." We agree with the parties that there is no Charge III in this case. Our review of the record of trial confirms that the only possible interpretation of this PTA provision is that any reference to Charge III and its specifications must be read as a reference to the Additional Charge and its two specifications. Therefore, we find the PTA required the convening authority to withdraw and dismiss, with prejudice, the Additional Charge and its two specifications. As we did above, we find the references to the PTA in the report of result of trial or court-martial order to be insufficient to show dismissal with prejudice.

While Appellant has not asked us for specific performance of the PTA term, he also has not objected to the Government's proposed remedy in his reply brief. We agree with the Government that specific performance is the appropriate remedy for its noncompliance with the PTA. As the Government highlighted in its brief, this exact remedy has been utilized by the United States Court of Appeals for the Armed Forces "in the interest of judicial economy"

6

when "conclud[ing] that such action is consistent with the intent of the convening authority even if the action was not specified in the convening authority's action." *United States v. Malacara*, 71 M.J. 380 (C.A.A.F. 2012) (mem.) (citation omitted). We have also recently used the remedy of specific performance, though at the appellant's explicit request, in *United States v. Ramsdell*, No. ACM 39533, 2019 CCA LEXIS 145 at *5 (A.F. Ct. Crim. App. 2 Apr. 2019) (per curiam) (unpub. op.). Here, we are (1) satisfied the parties have a mutual understanding that the dismissal with prejudice provision was a material term of the PTA; (2) the Government erred by not explicitly complying with this PTA provision; (3) the intent of the convening authority was to withdraw and dismiss with prejudice; (4) the error is susceptible to remedy in the form of specific performance; and (5) corrective action in the interest of judicial economy is appropriate. *See Malacara*, 71 M.J. at 380; *Smead*, 68 M.J. at 59. In our decretal paragraph we grant Appellant an unambiguous dismissal with prejudice.

## B. Cruel or Unusual Punishment

### 1. Additional Background

At action, the convening authority reprimanded Appellant using the following language:

> You are hereby reprimanded! Your salacious conduct of communicating with a minor over social media in such a lewd and disgusting manner is abhorrent. By possessing child pornography on your personal electronic device you have brought discredit upon yourself and the armed forces. Also, the federal conviction of these crimes will follow you throughout your life. Finally, you have a problem. I hope you get the help you need to fix yourself in order to protect the community at large and to keep you from reoffending.

Appellant argues the final three sentences of the reprimand are excessive and unconstitutional under the Eighth Amendment[6] because they (1) make no measurable contribution to acceptable goals of punishment and are a purposeless and needless imposition of pain and suffering; and (2) are grossly out of proportion to the severity of the crimes. Appellant further argues that the reprimand language violates Article 55, UCMJ, 10 U.S.C. § 855, because the convening authority used information or facts not presented to the court-martial. Appellant urges us to use our Article 66(c), UCMJ, 10 U.S.C. § 866(c), authority arguing his sentence is inappropriately severe even if we find no Eighth

---

[6] U.S. CONST. amend. VIII, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

Amendment or Article 55, UCMJ, violation. Appellant argues he was prejudiced by the reprimand because "states view this reprimand as justified caution or a warning to implement tighter sex offender registration requirements than [they] normally would."

The Government argues that the reprimand is proper and its brief addresses the three sentences identified by Appellant in order. On the first sentence—that the conviction will follow Appellant for the rest of his life—the Government argues the wording was not incorrect, unreasonably harsh, or outside the bounds of the law. On the second sentence—regarding Appellant having a "problem"—the Government argues that Appellant's convictions alone show that he committed more than one crime of a sexual nature that involved a minor and demonstrated his "problem." On the final sentence of the reprimand, the Government argues the convening authority did not improperly imply that Appellant had a high risk of recidivism and the expression of "hope" was a proper comment on the goal of rehabilitating Appellant. Even if the language of the reprimand contains error, the Government argues Appellant has not shown prejudice as he has no basis to support his fear that he may face tighter sex offender registration requirements because of the reprimand.

**2. Law**

"We review allegations of cruel or unusual punishment under a de novo standard." *United States v. Pena*, 64 M.J. 259, 265 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)). "In our evaluation of both constitutional and statutory allegations of cruel or unusual punishment, we apply the Supreme Court's Eighth Amendment jurisprudence 'in the absence of legislative intent to create greater protections in the UCMJ.'" *Id. (*citing *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006)).

"[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *Lovett*, 63 M.J. at 215 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). In the context of the death penalty, the Supreme Court has said "the Eighth Amendment bars not only those punishments that are 'barbaric' but also those that are 'excessive' in relation to the crime committed." *Coker v. Georgia*, 433 U.S. 584, 592 (1977). A "punishment is 'excessive' and 'unconstitutional' if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Id.* Our "judgment should be informed by objective factors to the maximum possible extent. To this end, attention must be given to the pub-

lic attitudes concerning a particular sentence—history and precedent, legislative attitudes, and the response of juries reflected in their sentencing decisions are to be consulted." *Id.*

Under Article 66(c), UCMJ, we have broad authority and the mandate to approve only so much of the sentence as we find appropriate in law and fact and may therefore grant sentence relief even without finding an Eighth Amendment or Article 55, UCMJ, violation. *See United States v. Gay,* 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016); *see also United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002). R.C.M. 1003(b)(1) states "[a] court-martial shall not specify the terms or wording of a reprimand. A reprimand, if approved, shall be issued, in writing, by the convening authority."

### 3. Analysis

Appellant views his reprimand as (1) not making a measurable contribution to acceptable goals of punishment and a purposeless and needless imposition of pain and suffering; and (2) grossly out of proportion to the severity of the crimes. We disagree with his views.

In general, a reprimand is a punitive censure. Rule for Courts-Martial (R.C.M.) 1003(b)(1), Discussion. In practice, it is a frank and common-sense expression of formal disapproval by the convening authority to the accused regarding the offenses for which the individual was sentenced. The reprimand may be based on the offenses, the evidence and testimony admitted at trial, and other matters that are properly before the convening authority such as a clemency request or a victim impact statement. Our military justice system grants the convening authority the discretion to choose the words of the reprimand. With few exceptions, in the Air Force, convening authorities are senior officers with a responsibility to preserve good order and discipline for the Airmen in their command. It is with this objective and historical backdrop that we assess Appellant's claims.

The military judge determined a reprimand was an appropriate punishment for the offenses. He made no clemency recommendation on the record to the convening authority. We presume the military judge was aware of R.C.M. 1003(b)(1) which required an approved reprimand to be issued in writing by the convening authority. *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citation omitted) (stating military judges are presumed to know the law and to follow it absent clear evidence to the contrary). In our view, if the military judge did not want to grant the convening authority the opportunity to punitively censure Appellant then he should not have adjudged a reprimand. There is little question that the military judge adjudged a reprimand knowing it could serve a useful sentencing purpose.

It is also important to recognize that a convening authority does not issue a reprimand without assistance from a trained legal professional. The post-trial processing system applicable to Appellant's case required a "concise written communication" of the staff judge advocate (SJA) or legal officer that the convening authority "shall consider" prior to taking action. R.C.M. 1106(d)(2); R.C.M. 1107(b)(3)(A)(ii). We have no doubt such advice and coordination assists the convening authority in the exercise of his discretion when a case involves a reprimand. In the post-trial processing documents in this case, the addendum to the SJA's recommendation had a draft action attached for the convening authority to consider. While we do not have the draft action and cannot see what changes may have been made by the convening authority, objectively we see a carefully designed clemency process that produced the reprimand's content and reflected the convening authority and SJA operating in tandem.

This does not mean that a convening authority's discretion to reprimand is unfettered. It is well settled that a convening authority cannot include language in a reprimand that directly references an offense that has been dismissed or resulted in an acquittal. *See, e.g., United States v. Hawes*, 51 M.J. 258, 261 (C.A.A.F. 1999) (striking reference to offense dismissed on appeal). In this case, however, we see no explicit reference in the reprimand to any dismissed offense, acquitted offense, or even to uncharged misconduct. Instead, the convening authority's reprimand begins by specifying the offenses for which Appellant was sentenced.

We find the language the convening authority used to reprimand was within the discretion provided to the convening authority under the law. In addition to referencing the offenses for which Appellant was sentenced and the evidence, we hold that a convening authority may also incorporate generally accepted sentencing philosophies. These philosophies, which are contained in the Rules for Courts-Martial, permit a trial counsel during sentencing argument to argue: (1) rehabilitation of the accused; (2) general deterrence; (3) specific deterrence of misconduct by the accused; (4) and social retribution. R.C.M. 1001(g). We find it obvious that if a trial counsel can argue for punishment using general sentencing philosophies then a convening authority may also utilize one or more of them in a reprimand. We now turn to the language of the reprimand in question.

On the first sentence that Appellant requests be stricken, we are not troubled by the reference that a federal conviction will follow Appellant for the rest of his life. Appellant said as much during his unsworn statement, "After this conviction, I will register as a sex offender. This will make it incredibly difficult to find employment in the future, to form a family, to find a place to live. This

will affect me for the rest of my life." Trial defense counsel's sentencing argument made two similar points: (1) a "conviction of this magnitude that involves minors, he's going to have incredibly hard life ahead of him as a 26-year-old" and (2) "[w]ith this conviction, he already will have that incredible stigma that follows him throughout his life." We find a convening authority may use matters presented or argued by an Appellant during trial in a reprimand.

On the second sentence Appellant requests to be stricken, he argues that the convening authority could not determine that he had a "problem" as there was no evidence of a risk/recidivism assessment or a psychological/psychiatric evaluation. We are not persuaded. Here, it was reasonable for the convening authority to conclude that based on the crimes and the stipulated facts that Appellant had a problem and it still existed on the date Appellant was reprimanded. The word "problem" as used here by the convening authority does not implicate a particular legal or medical definition or diagnosis that Appellant insinuates exists. We find this comment to be well within the generally accepted sentencing philosophies and therefore proper content for a punitive censure.

The third sentence addresses the convening authority's hope that Appellant will get help to "fix" himself in order to protect the community at large and to keep him from reoffending. This sentence falls within the sentencing philosophies of specific deterrence of Appellant and directly addresses his rehabilitation to a productive place in society. There was no question that Appellant's convictions required him to register as a sex offender. In our view, this sentence merely described the convening authority's aspirations that Appellant will not reoffend and the minors that Appellant inevitably will encounter in society will remain safe. We will not quibble with the convening authority's wording about Appellant fixing himself; we find the choice of wording to be well within his discretion.

We find the law provided the convening authority significant discretion to punitively censure. This reprimand's wording should be interpreted through the lens of a two-star general officer, a commander, and a general court-martial convening authority with a responsibility to preserve good order and discipline for all the Airmen in his numbered Air Force. We decline to interpret the words in a hyper-technical or overly legalistic manner. We find the reprimand as a whole contributed measurably to acceptable goals of punishment and served a legitimate purpose. Even if we were more troubled with the words chosen by the convening authority, we see no pain and suffering by Appellant because of the words of the reprimand. We will not speculate how an unknown state authority will interpret the language of the reprimand to enforce their sex offender registration laws. Finally, we find the reprimand was proportional to

the severity of the crimes. Therefore, Appellant's Eighth Amendment claims must fail.

We are aware of no legislative intent by Congress to provide greater statutory protection under Article 55, UCMJ, than the Eighth Amendment in this context. Appellant has not pointed us to any such legislative intent. For the reasons discussed above, we find Appellant is not entitled to relief under Article 55, UCMJ. While Appellant expresses concern with the reprimand referencing information or facts not presented to the court-martial, we do not share his concern. We find the reprimand as a whole reflects the convicted offenses, the evidence and information properly before the convening authority at action, generally accepted sentencing philosophies, and the aspirations the convening authority wanted to convey to Appellant to do better in the future.

We also considered whether we should exercise our authority under Article 66(c), UCMJ, even without finding an Eighth Amendment or Article 55, UCMJ, violation. As Appellant has argued his sentence is inappropriately severe, we have given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial. We conclude that the sentence is not inappropriately severe.

## III. CONCLUSION

Specification 1 of Charge I, Specification 1 of Charge II, and the Additional Charge and its two specifications are **DISMISSED WITH PREJUDICE.** The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[7]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[7] The general court-martial order also incorrectly identifies Charge I as a violation of Article 120, UCMJ, when the correct article is Article 120b, UCMJ. We order a corrected general court-martial order.